UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JON JOHNSON and JOHNSON & JOHNSON          CIVIL ACTION
COMMODITIES INC.

VERSUS                                  NO. 09-2496

CERTAIN UNDERWRITERS AT LLOYDS
OF LONDON, etc.                        SECTION "N" (4)

## ORDER AND REASONS

Presently before the Court is the motion for summary judgment filed by Defendants,

Certain Underwriters and Insurers at Lloyd's and in London, severally subscribing to Certificate No.

3051278 ("Defendants"). For the reasons stated herein, **IT IS ORDERED** that the motion (Rec.

Doc. 21) is **DENIED**.

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The

materiality of facts is determined by the substantive law's identification of which facts are critical

and which facts are irrelevant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505,

2510, 91 L. Ed.2d 202 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

On the showing made, the Court cannot conclude, on a summary basis, that no genuine issue of material fact exists and that Defendants are entitled to judgment as a matter of law. As counsel and the parties well know, however, this determination does not foreclose the possibility of a jury verdict, or ruling pursuant to Rule 50 of the Federal Rules of Civil Procedure, adverse to Plaintiffs.

In support of their motion, Defendants argue that Plaintiffs' coverage was cancelled as of June 13, 2005, because a satisfactory inspection of the subject property was not completed, as required, within 45 days of inception.[1] Defendants further maintain that, even if notice of the cancellation was deficient, as Plaintiffs urge, Plaintiffs' eventual acceptance and deposit of a check refunding a portion of the policy premium ratified the cancellation and bars recovery.

Based on the parties' summary judgment materials, the Court finds that a triable issue exists relative to the scope of Noah Lewis' authority as Plaintiffs' retail insurance agent; that is, whether Mr. Lewis' awareness, on or around June 8, 2005, of Defendants' intent to cancel coverage as of June 13, 2005, is properly charged to Plaintiffs. For instance, in his April 13, 2010, and May 8, 2010 affidavits, Mr. Johnson denies authorizing Mr. Lewis and/or Equity Partners to receive notices of cancellation for Plaintiff Johnson and Johnson Commodities, Inc. ("J&J").[2] Further, when deposed, Mr. Lewis explained that, while he receives copies of cancellation notices, and

---

[1]     The Court understands that the inspection was required to have been completed prior to May 14, 2005.

[2]     *See* Rec. Doc. Nos. 27-2 and 71.

usually sends these to clients as a courtesy, the insured receives the original notice from the insurer.[3]

In any event, moreover, Defendants specifically agreed that cancellation by them or on their behalf would be made:

> by delivering to the Assured or by mailing to the Assured, by registered, certified, or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than 30 days thereafter, or as per State Legislation the cancellation shall be effective. The mailing of such notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.[4]

The insurance documents provided to the Court identify the "Name and Address of Assured" as "Johnson & Johnson Commodities, Inc., 2223 Deslonde Avenue, New Orleans, Louisiana 70128."[5] Based on the parties' submissions, however, it is the Court's understanding that Defendants never provided prior notice of cancellation directly to J&J at any address, and particularly including 2223 Deslonde Avenue, New Orleans, Louisiana.[6]

Rather, on about May 14, 2005, Defendants apparently informed the London placing broker, Robert Withers of GAL Limited, that notice of cancellation with effect from June 13, 2005, had been issued. Then, on or about May 17th, June 3rd and 7th , 2005, Mr. Withers and Richard Cassagne, also of GAL Limited, provided similar notice of cancellation by electronic mail to the

---

[3] *See* Rec. Doc. Nos. 21-7, pp. 17 and 19 of 32.

[4] *See* Cover Note and Policy No. 3051278 (Rec. Doc. 21-3, pp. 18-19 and 43-44 of 55, and Rec. Doc. 21-6, pp. 3-6 of 52.

[5] *Id.*

[6] Defendants could have dictated an alternative means of notice in their insuring agreements. Indeed, Defendants could have provided that their sole notice obligation was to the London placing broker or, for instance, the broker or agent identified in the insured's application for insurance. They, however, did not. Nor did they require use of certified mail or other easily verified means of delivery.

American wholesale broker, Equity Partners Insurance Services, Inc. On June 8, 2005, Brian Silva of Equity Partners notified Mr. Lewis, by electronic mail, of cancellation as of June 13, 2005. Thereafter, Mr. Lewis avers that he mailed a letter to Mr. Johnson, on or about June 30, 2005, advising of the cancellation, along with a copy of "Addendum No. 1", which he had received from the London broker and which noted the cancellation of the policy as of June 13, 2005.

Significantly, however, Mr. Johnson denies ever receiving Mr. Lewis's June 30, 2005 letter, which purportedly was mailed to him, on behalf of J&J, at 5970 Crowder Boulevard, New Orleans, Louisiana, 70126, instead of the Deslonde Avenue or Bullard Avenue addresses reflected in the insurance documents. Although the trier of fact certainly could choose to disbelieve Mr. Johnson's denial, credibility determinations are not for this Court to make in considering a Rule 56 motion.

Further, although Mr. Lewis explains that, in early June, he attempted to talk to Mr. Johnson, by telephone, about the inspection, and that his assistant in fact spoke with Mr. Johnson about the inspection on June 3 and 13, 2010, he also states that he did not verbally notify J&J of the cancellation until he spoke with Mr. Johnson in September 2005 following Hurricane Katrina. And, though the refundable portion of the policy premium was provided to Mr. Lewis on or about July 11, 2005, and he, in turn, had a check prepared on July 21, 2005, for J&J, it is the Court's understanding that Mr. Lewis did not actually send a refund check to Mr. Johnson, or inform him of its availability, until sometime after the hurricane.[7] Thus, given all of the foregoing, the Court must allow the trier of fact to decide whether Plaintiffs are charged with notice of the policy cancellation prior to incurring the loss resulting from Hurricane Katrina.

---

[7] *See* Rec. Doc. Nos.71 and 71-2.

Defendants' second argument in favor of summary judgment likewise fails. On the showing made, the Court cannot find, as a matter of law, that Mr. Johnson ratified – or otherwise acquiesced to – Defendants' policy cancellation by depositing Mr. Lewis' check for the refundable portion of the policy premium.

As Defendants point out, on December 6, 2006, Mr. Johnson, through counsel, requested that Mr. Lewis issue a replacement check for the one that had been provided to Plaintiffs on or about May 25, 2006. Significantly, however, neither the letter requesting the check nor the replacement check itself contains any language purporting to acknowledge and/or concede cancellation of the policy, or to release any claims against Defendants. Such language easily could have been included at Defendants' behest. Further, by the time the November 5, 2007 replacement check was deposited on or about November 28, 2007, Plaintiffs already had been denied reinstatement of the policy, had submitted a claim for policy proceeds to Defendants, and had filed suit against Defendants in both state and federal court. Under these circumstances, the Court is not persuaded that Plaintiffs' deposit of a $1,710.00 check necessarily represented ratification of Defendants' prior actions, or a waiver of Plaintiffs' claims, rather than an effort to mitigate damages.

New Orleans, Louisiana, this 11th day of May 2010.

KURT D. ENGELHARDT
United States District Judge

5